IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS ROGER PHILLIPS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 20-01547 |

ORDER

AND NOW, this 8th day of March 2022, the Court has considered the parties' motions for summary judgment and will award judgment in favor of Defendant. The decision denying Plaintiff's application disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, is supported by substantial evidence and, thus, will be affirmed. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).[1]

---

[1] Plaintiff applied for DIB under the Act on September 13, 2017. (R. 15). An Administrative Law Judge ("ALJ") found that though Plaintiff's working ability was diminished by at least five severe medically determinable impairments (degenerative disc disease, degenerative joint disease, diabetes mellitus with neuropathy, carpel tunnel syndrome, and coronary artery disease), his remaining abilities were sufficient to find work in at least three occupations. (R. 18, 26—27). Accordingly, the ALJ decided that Plaintiff was "not under a disability" from his alleged onset date (July 20, 2016) through the date last insured (March 31, 2019). (R. 15, 27). Once the Appeals Council declined to review that decision, Plaintiff sought this Court's review. Before the Court he has argued that the ALJ's decision lacks the support of substantial evidence and, therefore, must be remanded to the Commissioner for further proceedings. As explained herein, the Court is not convinced that the ALJ's decision is deficient as alleged and will grant summary judgment in Defendant's favor, effectively affirming the ALJ's decision.

Presented with a challenge to denial of benefits under the Act, the Court considers the entire record and reviews an ALJ's findings of fact "under the deferential 'substantial evidence' standard." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g); *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). Substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). If the ALJ's findings are

supported by such evidence, then they are conclusive. A reviewing court may not reweigh evidence or substitute its own findings for the ALJ's findings even where there is evidence in the record to support a "contrary conclusion." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (explaining that a reviewing court may not reweigh evidence or "substitute its conclusions for those of the fact-finder").

ALJs use a five-step sequential evaluation to evaluate disability. 20 C.F.R. § 404.1520(a).

> The first two steps involve threshold determinations that the claimant is not presently working, and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

*Williams*, 970 F.2d at 1180 (citing *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990)). Before an ALJ proceeds to steps four and five, he or she must make a finding as to the claimant's residual functional capacity ("RFC") based on his or her consideration of "all relevant evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Id.* at 40 (citations omitted). Claimants bear the burden of proof in the determination of their RFC before the burden shifts to the Commissioner to identify appropriate and available work at step five. *Williams*, 970 F.2d at 1180.

Plaintiff argues that the ALJ's decision is insufficiently supported in this case because the ALJ (1) failed to include any mental-health limitations in the RFC despite evidence in the record that he suffered from depression and anxiety; (2) disregarded certain medical opinion evidence and selectively omitted other medical records that supported more significant physical limitations than those the ALJ ultimately included in the RFC; and (3) failed to address evidence in the form of a letter from Plaintiff's former employer that indicated Plaintiff had an excellent work history and that health problems had interfered with his ability to continue working. All three of Plaintiff's arguments concern the ALJ's consideration of the evidence and whether she adequately explained her consideration of the evidence in the decision denying Plaintiff's application for benefits under the Act.

An ALJ's decision must reflect his or her consideration of relevant evidence, that is, the ALJ must support his or her findings with a statement of reasons that permits meaningful review.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).  This often involves explaining how the ALJ resolved competing evidence.  When ALJs credit some evidence and reject contrary evidence, they must provide a "reason why probative evidence has been rejected" so that reviewing courts can ensure the reason is not "improper."  *Cotter v. Harris*, 642 F.2d 700, 706—07 (3d Cir. 1981) (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).  An improper reason would be "no reason" or a "wrong reason."  *Id.*  Further, where the evidence in question is medical opinion evidence, ALJs must articulate the persuasiveness of medical opinions using the criteria at 20 C.F.R. § 404.1520c (outlining how ALJs articulate their consideration of medical opinions and prior administrative medical findings for claims, like the claim in this matter, filed on or after March 27, 2017).

      Considering evidence pertaining to Plaintiff's mental health, the ALJ in this case decided that Plaintiff had two medically determinable mental health impairments: depression and anxiety.  (R. 18).  However, the ALJ found these impairments were not severe because they "did not cause more than minimal limitation" to Plaintiff's "ability to perform basic mental work activities."  (*Id.*).  In support of that finding, the ALJ explained that though some records showed "deficits of mood at times," other records showed "normal mood as well as normal range cognition, normal memory, no evidence of thought disorder, mostly cooperative attitude, good eye contact, adequate attention, and no impulsivity."  (R. 19).  Considering the mental health opinion evidence in the record, the ALJ explained that she found Plaintiff's Licensed Clinical Social Worker's ("LCSW") opinion "not persuasive" because it postdated Plaintiff's insured period, lacked explanatory support, and was not consistent with Plaintiff's treatment records.  (R. 25).  For example, Plaintiff's LCSW opined Plaintiff would be seriously limited in his ability to cope with "normal work stress" (R. 953), but exam findings included stability and controlled symptoms.  (R. 25) (citing, *e.g.*, R. 656 (treatment note indicating "Some anxiety and depression but manageable.")).  Similarly, the ALJ found the prior administrative finding of the State agency psychological consultant to be "not persuasive."  (R. 26).  The consultant found that Plaintiff was affected by some moderate mental limitations.  (R. 26) (citing R. 179—80).  But the ALJ assessed those findings as "not persuasive" in light of records that showed Plaintiff's symptoms were "manageable or controlled" such that he could care for others despite his own difficulties.  (R. 26) (citing, *e.g.*, R. 522, 656, 754).  Thus, having evaluated the evidence in the record pertaining to Plaintiff's mental health, the ALJ did not include any mental limitations in the RFC.  (*See* R. 21).

      The Court is satisfied with the ALJ's explanation of her mental health impairment findings.  It was reasonable for the ALJ to find Plaintiff's LCSW's opinion was not persuasive where it postdated his date last insured.  *See Zirnsak*, 777 F.3d at 614.  The ALJ's other reasons for rejecting that opinion and the State agency consultant's opinion showed that the ALJ considered the most important regulatory factors for assessing the persuasiveness of opinion evidence, supportability and consistency.  20 C.F.R. § 404.1520c(a).  In his brief and reply, Plaintiff has pointed out evidence that the ALJ might have cited in support of including mental limitations in the RFC, *e.g.*, an October 2016 evaluation showing Plaintiff suffered a moderate episode of recurrent major depressive disorder.  However, where the ALJ clearly considered evidence of Plaintiff's mental health impairments, as well as their associated symptoms and resultant limitations (R. 18—19), this Court may not set aside her findings to make its own.  The

3

fact finder in this matter—the ALJ—already weighed the competing evidence in the record and supported her findings with such evidence as would satisfy a reasonable mind. Accordingly, her findings are conclusive. Further, the Court dismisses Plaintiff's argument that once the ALJ found the LCSW and State agency consultant's findings unpersuasive, she impermissibly relied on her own lay opinion to formulate an RFC without mental limitations. ALJs are not required to find *a medical opinion* that supports their findings to reject contrary medical opinion evidence—medical opinion evidence may be rejected by reference to "contrary medical evidence." *See Williams*, 970 F.2d at 1184 (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981)). ALJs' reliance on their own lay interpretation of medical evidence is most concerning when they favor their own expertise against "uncontroverted" medical evidence. *Rutherford*, 399 F.3d at 554. When a limitation is supported by some evidence but contradicted by other evidence, it is not only permitted but necessary for the ALJ to determine which evidence is more reliable. *See id.* Thus, the Court finds no deficiency in the ALJ's mental health impairment findings in this matter.

The Court has reached the same conclusion as to Plaintiff's argument that the ALJ's articulation of Plaintiff's physical limitations in the RFC is not supported by substantial evidence. Plaintiff is especially critical of the ALJ's consideration of the opinions offered by Plaintiff's neurologist, Dr. Goldman, and the consultative examiner ("CE"). Dr. Goldman opined significant limitations in 2015, 2016, and 2019, indicating that Plaintiff would not be able to maintain full-time employment. (R. 810—11, 813—14, 1238—39). Similarly, the CE's opinion appeared to preclude all work because of one limitation: that Plaintiff could never stoop. (R. 609). The ALJ formulated an RFC that included abilities beyond those opined by Dr. Goldman and, contrary to the CE's opinion, included the ability to stoop occasionally. (R. 21). Plaintiff argues that the ALJ should have found Dr. Goldman's opinions more persuasive because of Dr. Goldman's treating history with Plaintiff and because the record supported Dr. Goldman's opinions. Plaintiff also argues that the record does not support the ALJ's departure from the CE's never-stoop limitation, and he suggests that the ALJ arrived at that limitation through an outcome-oriented partial rejection of the CE's opinion. When the ALJ questioned the VE about Plaintiff's work prospects, she started with a hypothetical question that included the CE's never-stoop limitation, but quickly amended her hypothetical when the VE testified that the limitation would eliminate all work. (R. 51—52).

To find Plaintiff's RFC, the ALJ first considered Plaintiff's allegations of not being able to work because of neck pain, back pain, foot pain, leg pain, hand/arm pain, diabetes, neuropathy, carpal tunnel, and difficulty bending, kneeling, and concentrating. (R. 21). She considered Plaintiff's testimony that his medications made him drowsy and that he could only walk briefly because of back and knee pain. (R. 21). Next, the ALJ considered the objective medical evidence, such as evidence of Plaintiff's coronary artery disease, "mild degenerative changes" in the lumbar spine from 2015—17, diabetes with neuropathy, and examinations showing, *inter alia*, "reduced range of motion of the lumbar spine, and antalgic gait." (R. 22—23). Despite this evidence, the ALJ explained that other evidence led her to the conclusion that the "alleged severity of the claimant's various symptoms and functional limitations are not consistent with the objective evidence, conservative treatment, or the claimant's activities of daily living." (R. 22). In support of that conclusion, the ALJ explained that despite Plaintiff's

4

coronary artery disease, his records indicated he was "generally stable." (*Id.*). Though Plaintiff suffered from chronic back pain, degenerative changes in the lumbar spine were mild and Plaintiff's orthopedist had opted for conservative treatment instead of surgery. (*Id.*). Eventually Plaintiff was diagnosed with just prediabetes and his paresthesia had improved, and despite Plaintiff's complaints of body pain, numbness, tingling, and weakness, Plaintiff's range of motion in his neck, as well as sensation, strength, and gait were sometimes unaffected. (R. 22—23). Examinations in August 2018 and January 2019 (toward the end of the relevant period) showed that Plaintiff's range of motion in his knees allowed him to do a "partial squat." (*Id.*).

Finally, the ALJ addressed the opinion evidence. She explained that the opinions Dr. Goldman offered in 2015 were not persuasive because they were unsupported and predated the alleged onset date. (R. 24). Dr. Goldman's 2016 opinion indicated severe physical limitations, *e.g.*, that Plaintiff could only sit one hour during the workday. (*Id.*). Dr. Goldman's 2019 opinion reflected some improvement, but still supported significant limitations. (*Id.*). Considering these opinions, the ALJ explained that they were not persuasive because their severity was unsupported by Dr. Goldman's treatment records and inconsistent with other providers' records. (*Id.*). For example, MRI imaging showed only mild degenerative changes in the lumbar spine and treatment was kept conservative, including a recommendation to exercise. (*Id.*). As to the CE's opinion, the ALJ found it to be "somewhat persuasive," except for the stooping limitation. (R. 24—25). The ALJ explained she would not accept that limitation because it was "not supported by the exam findings or consistent with the record." (R. 25). She supported that partial rejection of the opinion with reference to evidence that Plaintiff's lumbar range of motion was normal on exam and he only had mild degenerative disc changes. (*Id.*).

This assessment of the physical impairments and limitations evidence is adequate to support the ALJ's RFC finding. Contrary to Plaintiff's argument, the ALJ did not minimize abnormal findings and limitations in the record, such as his neurologist's notes concerning cervical and lumbar arthritis causing chronic low back pain, nor did she selectively cite from the record to support the decision. (Doc. No. 16, pgs. 22, 28). Contrary to Plaintiff's characterization of the decision—arguing the ALJ ignored evidence of decreased range of motion and limping, painful palpitation to lumbar spine, arthritis that did not improve with rest, frequent low back pain, and difficulty stooping, bending, and lifting—the ALJ discussed Plaintiff's degenerative disc disease, arthritis, carpal tunnel, and difficulties associated therewith such as "moderately painful palpitation and reduced range of motion of the lumbar spine, and antalgic gait." (R. 23). Weighing that evidence against the evidence she cited in support of her finding (discussed *supra*), the ALJ formulated Plaintiff's RFC, and this Court may not endeavor to strike a fresh balance among the evidence in the record where the ALJ's resolution is adequately supported.

Here, the Court briefly notes that it is somewhat understandable that the Plaintiff would question whether the ALJ's rejection of the CE's never-stoop limitation was outcome-oriented where the ALJ amended her hypothetical as soon as the VE indicated a never-stoop limitation would be work-preclusive. (R. 51—52). Nonetheless, the ALJ ultimately supported her excision of the never-stoop limitation from the hypothetical and, accordingly, the RFC by explaining that Plaintiff had a "normal range of the lumbar spine" and only "mild degenerative disc disease."

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 17) is GRANTED as specified above.

                                                         s/ Alan N. Bloch
                                                        United States District Judge

ecf:      Counsel of Record

---

(R. 25). "Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist" that also requires some "[f]lexibility of the knees as well as the torso." SSR 83-10, 1983 WL 31251 at *6 (S.S.A. Jan. 1, 1983). The ALJ thus logically connected her rejection of the never-stoop limitation to evidence showing only moderate limitation of Plaintiff's lumbar flexibility. Where, as here, some evidence in the record supports a limitation and other evidence opposes it, ALJs are entrusted with discerning which limitations are appropriate for inclusion in the RFC. *Zirnsak*, 777 F.3d at 615.

Plaintiff's final argument—that the ALJ ignored a letter in evidence from his former employer—requires only brief discussion. Plaintiff argues the letter was relevant because it showed his excellent work history and should have bolstered his credibility, but he concedes that ALJs do not make a finding as to credibility specifically, *see* SSR 16-3P, 2017 WL 5180304 at *2 (S.S.A. Oct. 25, 2017). ALJs must support their decisions with citation to sufficient evidence and must also explain why they reject evidence so that reviewing courts can ensure no "significant probative evidence" failed to be "credited or" was "simply ignored." *Cotter*, 642 F.2d at 705. However, it would be totally impractical to demand that ALJs "specifically reference 'every relevant treatment note.'" *Knox v. Astrue*, No. CIV.A 09-1075, 2010 WL 1212561, at *7 (W.D. Pa. Mar. 26, 2010) (citation omitted). The letter in question here was authored by Plaintiff's former boss. It indicates that, when Plaintiff was first hired, he would be "early for work and would stay late." (R. 375). It further documents an incident when Plaintiff blacked out in front of his boss and explains that—after seeing a neurologist, several absences, and incidences of needing to come in early from his work—Plaintiff and his boss sat down to agree it was "time to call it quits." (*Id.*). The ALJ did not mention the letter in her decision but did appropriately credit that period of Plaintiff's employment history. (R. 17). Considering Plaintiff's argument that the ALJ should have specifically addressed the letter, the Court is unconvinced that it constituted "significant probative evidence," *Cotter*, 642 F.2d at 705, such that the Court should order remand because there is no discussion of it in the decision. Plaintiff's work history was never in question, nor is there any indication in the decision that the ALJ believed Plaintiff to be malingering such that evidence of his desire to work would have been relevant to refute such a charge. Accordingly, the Court finds no meaningful error in the ALJ's failure to specifically address the letter—ALJs must explain their consideration of significant probative evidence, but not all evidence bears repeating.